[Cite as *Buckeye N. Coatings, L.L.C. v. Reeves*, 2025-Ohio-5469.]

# IN THE COURT OF APPEALS OF OHIO
# ELEVENTH APPELLATE DISTRICT
# GEAUGA COUNTY

| | |
|---|---|
| BUCKEYE NORTH COATINGS, LLC, d.b.a. RHINO SHIELD, | CASE NO. 2025-G-0013 |
| Plaintiff-Appellant, | Civil Appeal from the Court of Common Pleas |
| - vs - | |
| SHAUN G. REEVES a.k.a. SEAN G. REEVES, | Trial Court No. 2023 M 000624 |
| Defendant-Appellee. | |

## OPINION AND JUDGMENT ENTRY

Decided: December 8, 2025
Judgment: Affirmed

*Dave Lackey,* Sybert, Rhoad, Lackey & Swisher, L.L.C., 153 South Liberty Street, Powell, OH 43065 (For Plaintiff-Appellant).

*Mark E. Porter*, Law Office of Mark E. Porter, L.L.C., 1180 Bell Road, Suite 5, Chagrin Falls, OH 44022 (For Defendant-Appellee).

ROBERT J. PATTON, P.J.

{¶1} Appellant, Buckeye North Coatings, LLC, d.b.a. Rhino Shield ("Buckeye North Coatings"), appeals the judgment of the Geauga County Court of Common Pleas finding that Buckeye North Coatings materially breached its contract with appellee, Shaun G. Reeves a.k.a. Sean G. Reeves ("Reeves"). For the following reasons, we affirm.

{¶2} This case is before the court after Buckeye North Coatings applied an exterior coating to Reeves's home. Reeves asserted that the product failed and refused to pay the purchase price on the contract. Buckeye North Coatings filed a mechanic's lien

against Reeves home and instituted the civil action below. Reeves asserted cross claims for breach of contract, breach of express warranty, and violation of the Consumer Sales Practices Act. The trial court found in favor of Reeves, but limited his recovery, pursuant to the contract, to the amount actually paid on the contract. Buckeye North Coatings appeals the trial court's decision.

{¶3} After a thorough review of the record and pertinent law, we conclude that the trial court did not err in finding in favor of Reeves on the breach of contract claim. We further conclude that the trial court permitted parol evidence that should have been excluded. Its admission was harmless and did not impact the outcome of the case. We further hold that the trial court did not abuse its discretion by permitting inadmissible testimony or hearsay evidence. Accordingly, Buckeye North Coatings assignments of error are without merit, and the decision of the Geauga County Court of Common Pleas is affirmed.

**Substantive and Procedural Facts**

{¶4} This case arises from a contract entered into between Reeves and Buckeye North Coatings for the application of its product, Rhino Shield. Reeves testified that during the Covid-19 pandemic he decided he wanted to build a geodesic home.[1] Reeves purchased a kit for the home and with the help of Scott McLeod ("McLeod"), he erected the structure on his property. McLeod had experience constructing over 450 similar homes. Once the structure was erected, but before it had water or electric service, Reeves approached Buckeye North Coatings about coating the exterior of the structure with Rhino

---

1. A dome shaped structure.

Case No. 2025-G-0013

Shield. Joseph Kirchner ("Kirchner"), a salesperson for Buckeye North Coatings, drew up a contract after meeting with Reeves, and scheduled the work to be performed.

{¶5} During the application process Reeves and McLeod both noted some irregularities. It rained prior to the date the crew came out to install the product. When they arrived, Reeves testified that they did not have a way to power wash the structure, a lift to reach the top of the structure, nor any sort of power source to run such equipment. When the caulk was applied, as part of the preparation process, the building was still wet. The next day, after the caulk had been applied, Reeves noted that the caulk was still wet. Following the application of the actual coating, Reeves stated that he felt the caulk was "mushy" in the joints. A substantial rain occurred after the product was applied, and Reeves testified that "gallons" of rain poured into his geodesic home.

{¶6} The total contract price was $17,831 for Reeves's coating application. On March 1, 2023, Reeves paid a down payment of $1,783. Reeves was to pay half of the remaining balance midway through completion, and the remaining half of the balance upon completion. Buckeye North Coatings attempted to remediate the work performed on Reeves's structure. Water intrusion continued to occur after the attempt to remediate. Reeves notified Buckeye North Coatings about the continued water intrusion, but they refused any further attempts to remediate. Reeves then hired a different company to coat his roof at an additional cost. Buckeye North Coatings filed a mechanic's lien against Reeves's structure and instituted a civil complaint against Reeves for breach of contract on October 19, 2023. Reeves filed his answer and counterclaim for breach of contract on November 30, 2023.

{¶7}   A bench trial was held on February 18, 2025. Joseph Kirchner, Theresa Kovak, Shaun Reeves, and Scott McLeod testified at the bench trial. The trial court rendered its decision in favor of Reeves, on March 27, 2025, concluding that Buckeye North Coatings failure to perform the initial preparation steps led to the failure of the product once applied. Further, that the steps that were not taken were so material to the contract that the failure to perform them relieved Reeves of his obligation to pay under the contract. The trial court further ordered Buckeye North Coatings to remove the mechanic's lien on Reeves's structure and concluded that Reeves recovery was limited to his initial down payment amount of $1,783 in damages.

{¶8}   Buckeye North Coatings timely appeals the trial court's judgment.

**Assignments of Error**

{¶9}   On appeal, Buckeye North Coatings asserts the following assignments of error:

{¶10}   "[1.] The trial court erred in finding that Buckeye North materially breached its contract."

{¶11}   "[2.] The trial court erred by not finding in favor of Buckeye North for its breach of contract claim."

{¶12}   "[3.] The trial [court] erred by allowing the introduction of parol evidence at trial."

{¶13}   "[4.] The trial court abused its discretion by allowing the opinion or expert testimony when the witness did not have specialized knowledge, skill, experience or training regarding the subject matter of the testimony under Evid.R. 702."

{¶14} "[5.] The trial court abused its discretion by allowing the testimony of the defendant-appellee's expert witness when there was spoilation of evidence by the defendant-appellant."

{¶15} "[6.] The trial court erred in allowing inadmissible hearsay evidence."

**Breach of Contract**

{¶16} In its first assignment of error, Buckeye North Coatings asserts that the trial court erred in finding that it materially breached its contract with Reeves. Buckeye North Coatings asks, "[c]an a party who satisfied its contractual obligations be held to be in material breach of contract for failing to comply with obligations not mentioned and explicitly excluded in the contract?"

{¶17} Buckeye North Coatings avers that the trial court concluded that "Buckeye North materially breached its contract by failing to properly-prepare the work for application of the product, resulting in leaks." The trial court judgment entry, however, concluded that "Reeves [asserts] that Buckeye failed to comply with three of the five duties contained in the 'PREPARATION' section of the contract. [Buckeye North Coatings] does not dispute these alleged failures. . . . [Buckeye North Coatings]'s failure to comply with its own contract in preparation for application of the product assured that the product would fail to perform as expected or intended. [Buckeye North Coatings]'s failure precluded substantial compliance such that it breached the contract."

{¶18} The appellate standard of review on appeal for a finding of breach of contract is whether the lower court erred as a matter of law. *Metal Seal Precision, Ltd. v. Good Time Outdoors, Inc.*, 2018-Ohio-5326, ¶ 43 (11th Dist.), quoting *Falcone Bros., Inc. v. Pawmew, Inc.*, 2017-Ohio-6958, ¶ 15 (5th Dist.), citing *Unifund, CCR, L.L.C. v.*

*Johnson*, 2014-Ohio-4376, ¶ 7 (8th Dist.). "'We must therefore "determine whether the trial court's order is based on an erroneous standard or misconstruction of the law.'"' *Id.*, quoting *Pawmew, Inc.* at ¶ 15, quoting *Unifund* at ¶ 7. The trial court's findings of fact must be given due deference so long as supported by competent, credible evidence. *Id.*, citing *Pawmew, Inc.* at ¶ 15. The trial court's decision will not be disturbed absent an error in its application of the law, so long as it is supported by competent, credible evidence.

{¶19} To prevail on a breach of contract claim, the plaintiff must prove: "(1) the existence of a contract; (2) performance by plaintiff; (3) breach by the defendant; and (4) damages." *Dukuzumuremyi v. Martin*, 2025-Ohio-508, ¶ 43 (11th Dist.), citing *Shaffer v. Triple Diamond Excavating*, 2010-Ohio-3808, ¶ 18 (11th Dist.).

{¶20} Here, the parties agreed that there was a contract which satisfies the first prong. The parties agreed that all of the enumerated preparation steps in the contract were not performed. The trial court noted, "Reeves [asserts] that Buckeye failed to comply with three of the five duties contained in the 'PREPARATION' section of the contract. [Buckeye North Coatings] does not dispute these alleged failures. It merely suggests that it was not required to perform same under the circumstances. However, the contract does not include language that would relieve [Buckeye North Coatings] of complying with the preparation requirements. . . . [Buckeye North Coatings]'s failure to comply with its own contract in preparation for application of the product assured that the product would fail to perform as expected or intended."

{¶21} The contract provided, in its first five provisions of the contract, under a section titled "PREPARATION," the following steps that would be performed:

> 1. Inspect surface in work area Prep [sic] all surfaces to be painted.

Case No. 2025-G-0013

2. Pressure-wash all surfaces in work area to be covered to remove loose debris.

3. Caulk and seal as necessary in areas to be painted.

4. Mask and/or shield all windows, doors, roofs, lawn, shrubs, decking and patios to prevent over-spraying.

5. Mask or remove all exterior appliances and reinstall upon job completion.

The parties do not dispute that the surface was not power washed prior to application of the coating. Buckeye North Coatings contends that the property was inspected and caulked. However, McLeod testified that the caulk was improperly applied to a wet surface, and that the caulk was still wet the day after the coating was applied. McLeod stated, after being established as a person with specialized skill and knowledge from his years as a contractor, that the caulk should not have been wet prior to applying the coating. Reeves said that the surface of the home was wet when the coating was applied. Buckeye North Coatings did not provide any evidence of the proper application of the caulk prior to the application of the coating. McLeod and Reeves further testified that after the coating was applied to the home, substantial rainfall occurred, and significant water intruded into the home. As such, Reeves provided evidence supporting each of the claims of breach of contract, and the trial court's finding was supported by competent, credible evidence.

{¶22} Appellant's first assignment of error is without merit.

Case No. 2025-G-0013

## Manifest Weight of the Evidence

{¶23} In its second assignment of error, Buckeye North Coatings asserts that the trial court should have found in favor of Buckeye North Coatings, and asks, "[w]as the trial court's decision against the manifest weight of the admissible evidence?"

{¶24} An appellate court's review of manifest weight of the evidence is the same in a civil case as in a criminal case. *Francosky v. Customized Vinyl Sales*, 2019-Ohio-2172, ¶ 16 (11th Dist.), citing *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 17. A reviewing court will not reverse the trial court's judgment so long as some competent, credible evidence supports the judgment. *Id.*, quoting *In re Kangas*, 2007-Ohio-1921, ¶ 81 (11th Dist.). "When applying the manifest-weight standard of review, the reviewing court reviews the entire record, "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'''" *Id.* at ¶ 17, quoting *Volkman* at ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist. 2001). "'The finder of fact is entitled to believe all, part, or none of the testimony of any witness.'" *Id.*, quoting *River Oaks Homes, Inc. v. Twin Vinyl, Inc.*, 2008-Ohio-4301, ¶ 27 (11th Dist.). "'Under the manifest weight standard of review, we are "guided by a presumption" that the fact-finder's findings are correct.'" *Id.* at ¶ 18, quoting *Terry v. Kellstone, Inc.* 2013-Ohio-4419, ¶ 13, (6th Dist.), citing *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 79-80 (1984). Accordingly, we review the record to determine if the trial court clearly lost its way such as to create a manifest miscarriage of justice.

Case No. 2025-G-0013

{¶25} As previously noted, the parties do not dispute that the property was not power washed as required by the contract. No part of the contract relieved Buckeye North Coatings of the obligation to power wash the surface of Reeves's building prior to applying the Rhino Shield product. Testimony by McLeod and Reeves both indicated that the caulk was applied after it had rained and that it was still wet to the touch even after the Rhino Shield product had been applied. McLeod testified that in his experience, caulk should not be wet prior to application of an exterior coating. McLeod further said that, after coating, he saw the caulk had pulled away in some areas leaving gaps for water to enter the home. Video evidence of the water intrusion into Reeves's home was presented at the bench trial. Conversely, Buckeye North Coatings did not present any evidence to the contrary. Accordingly, it cannot be said that the trial court clearly lost its way creating a manifest miscarriage of justice, and Buckeye North Coatings' second assignment of error is without merit.

## Parol Evidence

{¶26} In its third assignment of error, Buckeye North Coatings contends that the trial court improperly permitted parol evidence by allowing testimony about Rhino Shield's website, and an exhibit purportedly from Rhino Shield's website. The trial court permitted the testimony based on the website as being "[Buckeye North Coatings'] own information that they have put out." Buckeye North Coatings avers that Reeves attempted to use information from the website to suggest that the contract promised "things like protecting Reeves' home from the rain." Reeves contends that the trial court was permitted to consider statements made on Rhino Shield's website because the contract is silent on the issue of whether the product ensured a waterproof result.

{¶27} Appellate courts consider the applicability of parol evidence under a de novo standard of review. *Bull Run Properties, L.L.C., v. Albkos Properties, L.L.C.*, 2011-Ohio-5712, ¶ 22 (11th Dist.), citing *Dassel v. Hershberger*, 2010-Ohio-6595, ¶ 19 (4th Dist.); *Rejas Invests. v. Natl. City Bank*, 2006-Ohio-5586, ¶ 61 (2nd Dist.); *Rice v. Rice*, 2002-Ohio-3459, ¶ 38 (7th Dist.). Thus, the reviewing court reviews the record to determine if the trial court misapplied the law.

{¶28} The Supreme Court of Ohio has noted:

> The parole evidence rule states that "absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior contemporaneous oral agreements, or prior written agreements." 11 Williston on Contracts (4 Ed.1999) 569-570, Section 33:4. Despite its name, the parol evidence rule is not a rule of evidence, nor is it a rule of interpretation or construction. *Charles A. Burton, Inc. v. Durkee* (1952), 158 Ohio St. 313, 324, 49 O.O. 174, 179, 109 N.E. 2d 265, 270. 'The parol evidence rule is a rule of substantive law which, when applicable, defines the limits of a contract.' *Id.*, paragraph one of the syllabus.

*Galmish v. Cicchini*, 2000-Ohio-7, ¶ 17. Further, the parole evidence will not serve to exclude evidence of fraud that induced the contract. *Id.* at ¶ 20.

{¶29} "On the other hand, '[w]here a term is ambiguous, parol evidence is admissible to interpret, but not to contradict, the express language of the contract.'" *Hague v. Kosicek*, 2019-Ohio-2089, ¶ 29 (11th Dist.), quoting *Ohio Historical Soc. v. Gen. Maintenance & Eng. Co.*, 65 Ohio App.3d 139, 146 (10th Dist.1989). "'[I]f such an ambiguity is alleged, it must arise from the language of the contract itself, and, therefore, courts will not admit parol evidence to construe an ambiguity forced into the contract to strain the apparent meaning of the language.'" *Id.*, quoting *Sherock v. Ohio Municipal League Joint Self-Ins. Pool*, 2004-Ohio-1515, ¶ 16 (11th Dist.), quoting *Fireman's Fund*

*Ins. Co. v. Mitchell-Peterson, Inc.*, 63 Ohio App.3d 319, 328 (12th Dist. 1989), citing *Cincinnati v. Gas Light & Coke Co.*, 53 Ohio St. 278, 286-287 (1895).

{¶30} Here, the trial court did not make a finding that the contract was ambiguous regarding the products intended ability to "waterproof" Reeves's structure. Absent a finding of ambiguity, the trial court was not permitted to consider parol evidence in making its determination. "If evidence is allegedly admitted in violation of the parol evidence rule, the standard of review is harmless error." *MRI Software, L.L.C. v. West Oaks Mall FL, L.L.C.*, 2018-Ohio-2190, ¶ 28 (8th Dist.), citing *Robert v. Marks*, 2017-Ohio-1320, ¶ 11 (3d Dist.), citing *Langfan v. Carlton Gardens Co.*, 2009-Ohio-3318, ¶ 24 (3d Dist.). Accordingly, the trial court's judgment will not be disturbed if the admission of the parol evidence was harmless.

{¶31} Pursuant to Civ.R. 61, when evidence is admitted in violation of the parol-evidence rule, the standard of review is "harmless error." The reviewing court must determine whether the error was either harmless or prevented substantial justice from being done. "'Generally, in order to find that substantial justice has been done to an appellant so as to prevent reversal of a judgment for errors occurring at the trial, the reviewing court must not only weigh the prejudicial effect of those errors but also determine that, if those errors had not occurred, the jury or other trier of the facts would probably have made the same decision.'" *Licata Jewelers, Inc. v. Levis Commons, L.L.C.*, 2011-Ohio-4684, ¶ 34, (6th Dist.), quoting *Cappara v. Schibley*, 1999-Ohio-278, ¶ 19 (1999), quoting *Hallworth v. Republic Steel Corp.*, 153 Ohio St. 349 (1950). Therefore, if a reviewing court determines that the trial court improperly permitted parol evidence, the judgment will not be reversed if the improperly admitted evidence was harmless.

{¶32} Buckeye North Coatings contends that the testimony and screen shots admitted from Rhino Shield's website (Defendant's Exhibit B) constitute parol evidence as to whether the coating applied to Reeves's property was intended to waterproof the structure. Kirchner, the salesperson who drew up the contract, testified that the coating was not intended to be a roofing system and that the product was intended to be water resistant, not waterproof. The contract itself contained seemingly conflicting information about the degree of prevention from water intrusion the product possessed. The contract noted in one section that "[a]lterations to the coated surfaces, natural disasters, acts of God, lack of proper drainage (standing water), pre-existing conditions, substrate failure, leaks occurring around window frames, door frames, or through roofs are not covered under Buckeye North Coatings, L.L.C. or manufacturer's warranty and will cause the warranty to be void." However, the contract provided in the initial preparation section that after the surface was inspected and pressure washed, Buckeye North Coatings would "[c]aulk and seal as necessary in areas to be painted."

{¶33} While the trial court did not make a finding of ambiguity, which would permit the use of parole evidence to resolve the contract's vagueness, the contract does explicitly state in its preparation section that after the surface was inspected and pressure washed, necessary areas would be caulked and "sealed." McLeod testified to the conditions of the caulk he observed when he was on the site, noting that the caulk was pulling away from portions of the substrate leaving visible gaps where water could intrude. Regardless of the degree of water prevention the coating was intended to prevent, the evidence presented indicates that the structure was not caulked and sealed as necessitated by the contract. The trial court concluded that Buckeye North Coatings

Case No. 2025-G-0013

breached the contract as the gaps ensured that the product would fail, and that the caulking and sealing portion of the preparation steps were so fundamental to the contract as to relieve Reeves of his obligation to perform. The trial court did not indicate that the decision was made based on the product purportedly promising to waterproof Reeves's structure, but noted instead, "[t]he heart of the problem was that [Buckeye North Coatings] had never previously applied the Rhino Shield product to a geodesic home. This was essentially a real-world test that failed." Rather, the trial court relied on the required preparation steps combined with the language of the contract to determine that the result intended was one that prevented water intrusion. Thus, the testimony and evidence admitted regarding the degree of water protection the product was intended to provide were harmless as the trial court would have reached the same result had they been excluded. Buckeye North Coatings' third assignment of error is without merit.

### Witness Testimony

{¶34} In its fourth assignment of error, Buckeye North Coatings avers that the trial court abused its discretion when it admitted the testimony of McLeod and Reeves regarding the application of caulk.

{¶35} This court has noted that "[g]enerally, '[t]rial courts have broad discretion in determining the admissibility of expert testimony, subject to review for an abuse of discretion.'" *End the Noise Inc. v. Kirtland Country Club Co.*, 2021-Ohio-3474, ¶ 52 (11th Dist.), quoting *Terry v. Caputo*, 2007-Ohio-5023, ¶ 16. "'[A]n abuse of discretion is the trial court's "failure to exercise sound, reasonable, and legal decision-making."'" (Brackets in original.) *Id.*, quoting *Ivancic v. Enos*, 2012-Ohio-3639, ¶ 70 (11th Dist.), citing *State v. Beechler*, 2010-Ohio-1900, ¶ 62 (2d Dist.), quoting *Black's Law Dictionary* (8th Ed. 2004).

"'[W]here the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error.'" *Id.*, quoting *Ivancic* at ¶ 70. Thus, we review the trial court's admission of expert testimony for an abuse of discretion.

{¶36} Evid.R. 702 governs the admission of witness testimony as an expert which provides:

> A witness may testify as an expert if the proponent demonstrates to the court that it is more likely than not that all of the following apply:
>
> > (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
> >
> > (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
> >
> > (C) The witness' testimony is based on reliable scientific, technical, or other specialized information and the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

**Testimony of Scott McLeod**

{¶37} At the bench trial, the trial court limited McLeod's testimony to his expertise in constructing geodesic domes, his experience with caulk during his years as a contractor, and his personal knowledge of the caulk application on Reeves's structure. McLeod testified that he had participated in the construction of over 450 geodesic homes.

{¶38} After noting that it had rained the day before Buckeye North Coatings applied Rhino Shield to Reeves's home, McLeod testified to the following:

[DEFENSE COUNSEL]: So they were putting caulk on a wet surface. And what happened then?

[MCLEOD]: Ah, it didn't dry.

. . .

[DEFENSE COUNSEL]: All right. And did you come back to the property thereafter on subsequent days?

[MCLEOD]: Yes. The very next day and the following, yeah.

[DEFENSE COUNSEL]: And what did you see the very next day?

[MCLEOD]: I touched the caulking and it stuck to my finger.

[DEFENSE COUNSEL]: Is that good?

[MCLEOD]: No.

. . .

[DEFENSE COUNSEL]: So the caulk hadn't dried. Why was that an item of concern for you?

[MCLEOD]: Well, because they were getting ready to put some – they explained they were going to put primer on first then the actual Rhino Shield coat surface.

[DEFENSE COUNSEL]: Okay.

[MCLEOD]: So painting over top of wet caulking was what concerned me.

[DEFENSE COUNSEL]: Okay. Did you bring your concerns to Mr. Reeves?

[MCLEOD]: Yes. Oh, yeah.

[DEFENSE COUNSEL]: And did you observe him do anything based on that?

[MCLEOD]: Well, I don't know that there was anything he could do at that point because it was already caulked.

. . .

[DEFENSE COUNSEL]: All right. And did they come back the next day?

[MCLEOD]: Yes. They were there the next day.

[DEFENSE COUNSEL]: What did they do the next day?

[MCLEOD]: Ah, they were applying the primer, I believe, the next day.

[DEFENSE COUNSEL]: Okay. Was that the green colored liquid?

[MCLEOD]: No. This was like a white primer.

[DEFENSE COUNSEL]: Okay. Was the wood surface dry? Was the wood dry?

[MCLEOD]: The surface was dry.

[DEFENSE COUNSEL]: And underneath?

[MCLEOD]: Well, the caulking was still wet. I mean, you could still touch the caulking and it would come right off, it would stick right to your finger.

[DEFENSE COUNSEL]: Okay. And does wet caulk, in your experience, stop rain?

[MCLEOD]: No.

{¶39} The trial court noted in its judgment entry that Buckeye North Coatings produced no witnesses to testify as to the condition of the residence at the time of application of the coating, after the application of the product, or to testify about the remediation work.

{¶40} McLeod's testimony was limited primarily to that of a fact witness, testifying to what he observed during the application and after the application of Rhino Shield to Reeves's home. McLeod testified to his understanding of caulk based on his experience

Case No. 2025-G-0013

as a contractor and to what he saw after Buckeye North Coatings caulked Reeves's geodesic home. As such, the trial court did not abuse its discretion by permitting McLeod's testimony.

**Testimony of Reeves**

{¶41} Buckeye North Coatings asserts "[t]he trial court allowed Reeves to provide opinion/expert testimony regarding the proper application of caulk. . . . There was no evidence he was qualified as an expert witness under Evid.R. 702. The trial court further allowed Reeves to offer his opinion on the application of the Rhino Shield coating, despite the fact that he was not qualified to offer such an opinion."

{¶42} At the bench trial, Reeves's testimony regarding caulk was limited to his knowledge as a fact witness. After objection to Reeves as an expert witness, the following ensued:

> [THE COURT]: The witness can testify as to what he believes.
> . . .
>
> [DEFENSE COUNSEL]: All right. What, in your view, what was the purpose of the backer rod and caulk?
>
> [REEVES]: To prepare the surface for coating.
>
> [DEFENSE COUNSEL]: Okay. And whose coating would that be?
>
> [REEVES]: At this point, Rhino Shield was at the top of my list.

At this point in the testimony, Reeves had not entered into contract with Buckeye North Coatings. Reeves testimony about his understanding of the purpose of caulking was not outside the scope of what a lay person would understand, and therefore no qualification as an expert was required. The trial court limited his scope to his personal knowledge and belief.

Case No. 2025-G-0013

{¶43} Later, Reeves was permitted to testify about caulk based on his unique knowledge as he had 25 years of experience as a wholesale distributor and architectural consultant and caulk was included in his product mix. Specifically, Reeves discussed a brand called Henry's, that he was familiar with caulk, and had used it when he remodeled his own house in 2017 and 2018. Reeves later went on to testify that his belief that backer rods were required to be used with the caulk and that he had done some independent research about the caulk that Buckeye North Coatings planned to use on his structure. The trial court did not permit Reeves to elaborate on that research. Reeves later testified to the conditions of his building, after the rain and prior to the application of caulk, and to the condition of the caulk after the coating had been applied. Reeves testified that the joints where the caulk had been applied were mushy beneath the coating. Reeves testified that his expectation was that Buckeye North Coatings would follow whatever specifications were required for the application of the product.

{¶44} Reeves's testimony was primarily that of a fact witness relaying what he witnessed with regard to the application of caulk and coating to his building. Further, his understanding of caulk as a person with knowledge and skill was qualified as Reeves testified to being a distributor of the product for 25 years and using it on his own buildings. Accordingly, it cannot be said that the trial court abused its discretion by permitting the testimony of Reeves.

{¶45} Buckeye North Coatings' fourth assignment of error is without merit.

### Spoliation of Evidence

{¶46} In its fifth assignment of error, Buckeye North Coatings asserts that the trial court erred by admitting the expert testimony of McLeod where there was spoliation of

evidence. As noted above, the appellate court's standard of review on the admissibility of evidence is abuse of discretion. *End the Noise Inc.*, 2021-Ohio-3474, at ¶ 52 (11th Dist.), quoting *Terry v. Caputo*, 2007-Ohio-5023, ¶ 16. Thus, the trial court's decision will not be disturbed absent an abuse of discretion.

{¶47} Buckeye North Coatings directs this court to *Dardy v. Thompson*, 2014-Ohio-2700, ¶ 25 (11th Dist.), quoting *Simeone v. Girard City Bd. of Educ.*, 2007-Ohio-1775, ¶ 69 (11th Dist.) which states:

> Spoliation of evidence occurs when the proponent establishes the following three prongs:
>
> > [T]hat (1) the evidence is relevant; (2) that the offending party's expert had an opportunity to examine the unaltered evidence; and (3) that, even though the offending party was put on notice of impending litigation, this evidence was intentionally or negligently destroyed or altered without providing an opportunity for inspection by the proponent.
> >
> > If the court finds that relevant evidence was, indeed, destroyed, then the court has the power to fashion a just remedy.

(Bracketed text in original.)

{¶48} Buckeye North Coatings contests that the trial court assessed its "claim" of spoliation in the "offensive," as a cause of action, versus its intended use in the "defensive," as a request for the trial court to sanction Reeves by excluding his testimony pertaining to the spoliated evidence.

{¶49} Regardless of the trial court's perception of Buckeye North Coatings' use of the assertion of spoliation, this court will not reverse unless the trial court's decision constituted an abuse of discretion.

Case No. 2025-G-0013

{¶50} Here, Buckeye North Coatings was required to demonstrate that Reeves intentionally or negligently destroyed or altered the evidence without providing them an opportunity to inspect. To assert that Buckeye North Coatings did not have this opportunity is disingenuous. Buckeye North Coatings was responsible for the application of the coating, pursuant to the contract, and subsequently initiated litigation with Reeves for breach of contract. Buckeye North Coatings could have produced any of the individuals who prepared the surface and applied the coating to testify as experts to its application and the conditions surrounding such application. While Reeves admitted to mitigating the damage to its dome structure by hiring another company to install a covering after Buckeye North Coatings failed to remediate, it certainly had opportunity to produce testimony from the individuals who applied the coating. Buckeye North Coatings produced no such witnesses, testimony, or other evidence to support their claim. Accordingly, the trial court did not abuse its discretion by admitting McLeod's expert testimony. Buckeye North Coatings' fifth assignment of error is without merit.

**Hearsay Evidence**

{¶51} In its sixth and final assignment of error, Buckeye North Coatings asserts that the trial court erred by allowing Reeves to testify to out-of-court hearsay statements offered to prove the truth of the matters asserted. Specifically, Buckeye North Coatings avers that the trial court erred in allowing Reeves to state what the work crew said when Reeves asked them about backer rods at the bench trial.

{¶52} The improper admission of inadmissible hearsay evidence is a question of law and reviewed under a de novo standard of review. *State v. Cleveland*, 2024-Ohio-2126, ¶ 25 (11th Dist.), citing *State v. Meeks*, 2023-Ohio-4606, ¶ 52 (11th Dist.), citing

Case No. 2025-G-0013

*State v. Dotson*, 2019-Ohio-2393, ¶ 49 (11th Dist.). Therefore, we review the trial court's admission of hearsay under a de novo standard of review.

{¶53} Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. "Hearsay is defined as 'a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.'" *Kotkowski-Paul v. Paul*, 2022-Ohio-4567, ¶ 35 (11th Dist.), quoting Evid.R. 801(C). "An admission by a party opponent is not hearsay if the statement is offered against the party. Evid. R. 801(D)(2). Because such statements are admissions and provable through independent testimony, no foundation is necessary for their introduction aside from some demonstration that they are made by a party." *State v. Runnion*, 2004-Ohio-5637, ¶ 18, (11th Dist.), citing *State v. Thompson*, 87 Ohio App.3d 570, 577 (9th Dist. 1993). "The trial court is accorded wide discretion in admitting such evidence and determining the application of Evid.R. 801(D)(2). *Id.*, citing *State v. Kelly*, 2002-Ohio-6246, ¶ 26 (1st Dist.).

{¶54} A review of the record indicates that the trial court did not permit statements made by Buckeye North Coatings' work crew, though it did allow some statements Reeves made to the work crew. At the bench trial, the following interaction ensued:

> [DEFENSE COUNSEL]: So they put the caulk up. Take us from there.
> . . .
>
> [REEVES]: All right. Lorenzo got back with his generator. I asked him about the lift. And he sort of like shrugged his shoulders on a lift.
>
> And I said, don't see any backer rod in your truck.
>
> [PLAINTIFF'S COUNSEL]: I'm going to object to any communication between the parties as hearsay.

Case No. 2025-G-0013

[TRIAL COURT]: Mr. Reeves can testify as to what he said.

. . .

[REEVES]: I asked him where is your backer rod.

[DEFENSE COUNSEL]: What was his response?

[TRIAL COURT]: Well, there's the hearsay.

[DEFENSE COUNSEL]: Well, let me rephrase.

[TRIAL COURT]: We'll strike that.

[DEFENSE COUNSEL]: What did he do in response to your question?

[REEVES]: He provided assurances that that was next on his list.

[PLAINTIFF'S COUNSEL]: Objection. Hearsay.

[TRIAL COURT]: Yea. I'm going to sustain that objection.

[DEFENSE COUNSEL]: And I would also say that his own statements are still statements out of Court for the purpose of the truth of the matter asserted.

[TRIAL COURT]: The witness can testify as to what he said.

{¶55} At that point, Reeves's testimony regarding the work crew had been limited to his firsthand account that the work crew did not bring a generator or lift to the site. The record indicates that Reeves left the site and left the work crew to work. No further testimony was presented regarding his interaction with Buckeye North Coatings' work crew. The record indicates that the testimony in question, Reeves's question to the work crew, was not hearsay. The trial court did not permit the response from the work crew to Reeves. As such, the trial court did not permit hearsay and therefore did not err. Accordingly, Buckeye North Coatings' sixth and final assignment of error is without merit.

Case No. 2025-G-0013

{¶56} As we conclude that none of Buckeye North Coatings' assignments of error have merit, the lower court's decision must be affirmed.

{¶57} Based on the foregoing, the judgment of the Geauga County Court of Pleas is affirmed.


MATT LYNCH, J.,

EUGENE A. LUCCI, J.,

concur.

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, appellant's assignments of error are without merit. It is the judgment and order of this court that the judgment of the Geauga County Court of Common Pleas is affirmed.

Costs to be taxed against appellant.

_____
PRESIDING JUDGE ROBERT J. PATTON

_____
JUDGE MATT LYNCH,
concurs

_____
JUDGE EUGENE A. LUCCI,
concurs

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2025-G-0013