[Cite as *Propst v. Midway Mobile Homes, L.L.C.*, 2026-Ohio-2137.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

JAMES V. PROPST,
ADMINISTRATOR OF THE
ESTATE OF JAMES L. PROPST,

Plaintiff-Appellee,

- vs -

MIDWAY MOBILE HOMES, L.L.C.,

Defendant-Appellant.

CASE NO. 2025-T-0066

Civil Appeal from the
Girard Municipal Court

Trial Court No. 2024 CVF 00328

---

## OPINION AND JUDGMENT ENTRY

Decided: June 8, 2026
Judgment: Affirmed

---

*James R. Scher and Elise M. Burkey,* Burkey, Burkey & Scher Co., L.P.A., 200 Chestnut Avenue, N.E., Warren, OH 44483 (For Plaintiff-Appellee).

*James R. Lapolla,* Harrington, Hoppe & Mitchell, Ltd., 108 Main Avenue SW, Suite 500, Warren, OH 44481 (For Defendant-Appellant).

ROBERT J. PATTON, J.

{¶1}    Defendant-appellant, Midway Mobile Homes, L.L.C. ("Midway"), appeals from the judgment of the Girard Municipal Court granting judgment for the plaintiff-appellee, James V. Propst, administrator of the estate of James L. Propst, on their claims for breach of contract, conversion, unjust enrichment, and attorneys' fees following a bench trial. For the following reasons, we affirm.

{¶2}    Upon review, we conclude that the trial court's findings of fact are supported by competent, credible evidence, that the trial court did not err as a matter of law, and

that a review of the record supports the trial court's implicit determination that Midway acted in bad faith, thereby justifying both the award of attorneys' fees and the unjust enrichment finding. Alternatively, had there been any error in finding Midway liable under unjust enrichment, such an error would be harmless.

{¶3} Accordingly, the judgment entered in the Girard Municipal Court is affirmed.

**Substantive and Procedural Facts**

{¶4} On December 1, 2022, James Propst ("Propst"), through his power of attorney, Angela Gidden ("Gidden"), entered into a retail installment agreement with Midway for the purchase of a 1987 Fleming mobile manufactured home with a purchase price of $21,900. Propst tendered an $8,760 down payment and financed the remaining balance directly through Midway for a twelve-month term at an 18 percent interest rate.

{¶5} In addition to purchasing the manufactured home, Propst rented a lot on Midway's property. The amount of rent due was $350 per month. The rent was set to increase to $370 per month starting in January 2024.

{¶6} The retail installment agreement provided in part:

> 17. **Default.** Buyer will be in default under this Contract if any of the following events occur; (i) Seller does not receive any payment due under this Contract when the payment is due, (ii) Buyer violates any other obligations, representations, or warranties under or in connection with this Contract, (iii) Buyer declares bankruptcy or similar proceedings are commenced by or against Buyer, (iv) Buyer dies, (v) any information Buyer provided in connection with this Contract is incorrect or misleading, or (vi) when Seller is entitled to acceleration payment and/or when Seller is entitled to repossess the Home, both as determined in accordance with Ohio law. On Default, Seller shall have all rights permitted by law.

{¶7} Section 12 of the retail installment agreement expressly conditioned the Buyer's right to possession of the manufactured home so long as Buyer was not in default.

Case No. 2025-T-0066

{¶8}   Propst died on July 10, 2023, which was seven months into the retail installment agreement. At the time of Propst's death, all payments on the manufactured home were current. Gidden testified that upon Propst's death, she informed Laurie Groghan ("Groghan"), who was Midway's property manager at the time, that Propst had died and Gidden needed the manufactured home's serial number as well as payoff information to open an estate.

{¶9}   Groghan testified that she received the notice of Propst's death directly from Gidden as well as Gidden's request for payoff information for the estate to be opened. Groghan informed Midway's owner, Beverly Grant ("Grant"), that Gidden would be opening an estate and was requesting payoff information. In addition to Gidden's request for payoff information, Groghan testified that she received and forwarded a letter from an attorney representing Propst's estate which also requested payoff information. While awaiting such information, Gidden had kept the grass cut and the area surrounding the manufactured home neat.

{¶10}  Midway never provided the manufactured home's serial number nor did Midway provide the requested payoff information. Gidden returned to the manufactured home sometime in September 2023 or October 2023 and discovered the locks had been changed. Gidden called Groghan to inquire about the lock change, and Gidden was informed that Midway had decided to sell the manufactured home to a third party. Grant denied receiving any request for payoff information.

{¶11}  Testimony established that Propst had personal property at the manufactured home including a television, refrigerator, a washer, a Craftsman toolbox, a push mower, and a zero-turn lawnmower. Grant hired a junk remover from Craig's List to

Case No. 2025-T-0066

clear all of Propst's belongings and take them to a dump. Grant paid $250 for this service. Midway then resold the manufactured home to another person for $20,900 in June 2024.

{¶12} Grant testified that pursuant to Midway's park rules, if a resident is absent for more than thirty days without notice to the owner, she has the right to enter and evict the occupant. Grant further testified that she has the right to take the possessions from the manufactured home as it would then be abandoned. Grant additionally opined that she did not file a formal eviction because she believed the contract terminated immediately upon Propst's death, leaving Propst with no further right to the manufactured home.

{¶13} Following the bench trial, the trial court entered judgment in favor of Propst's estate. The trial court explicitly found that Gidden's and Groghan's testimony was more credible than Grant's. The trial court found that Midway breached the retail installment agreement, wrongfully converted Propst's estate property, was unjustly enriched in the amount of $14,700, and awarded attorneys' fees in the amount of $3,263.54. Midway timely appealed.

**The Appeal**

{¶14} Midway raises the following four assignments of error for review:

    (1) The trial court erred in finding that [Midway] breached the Retail Installment Agreement.
    (2) The trial court erred in finding that [Midway] converted the property of the estate, i.e. the mobile home.
    (3) The trial court erred in finding that [Midway] was unjustly enriched to the detriment of [Propst].
    (4) The trial court erred when it awarded attorneys' fees to [Propst] absent any agreement or subsequent finding of acts that constitute such an award of attorneys' fees.

{¶15} Because they are interrelated, we will address Midway's first two assignments of error together. In its first assignment of error, Midway claims that the trial court erred in finding that Midway breached the contract. In its second assignment of error, Midway similarly claims the trial court erred in finding that Midway converted the manufactured home. Specifically, Midway argues that the "clear and concise language of the Retail Installment Agreement states that when the Buyer is in Default, the Buyer loses the right to possess the mobile home, and the Seller can take repossession." Midway claims that the "unambiguous terms of the Retail Installment Agreement should have dictated[.]" We disagree.

{¶16} The appellate standard of review on appeal for a finding of breach of contract is whether the lower court erred as a matter of law. *Metal Seal v. Good Time Outdoors, Inc.*, 2018-Ohio-5326, ¶ 43, (11th Dist.), quoting *Falcone Bros., Inc. v. Pawmew, Inc.*, 2017-Ohio-6958, ¶ 15 (5th Dist.), citing *Unifund, CCR, L.L.C. v. Johnson*, 2014-Ohio-4376, ¶ 7 (8th Dist.). "'We must therefore 'determine whether the trial court's order is based on an erroneous standard or misconstruction of the law.'" *Id*., quoting *Pawmew, Inc.*, quoting *Unifund*. The trial court's findings of fact must be given due deference so long as supported by competent, credible evidence. *Id*., citing *Pawmew, Inc.* The trial court's decision will not be disturbed absent an error in its application of the law, so long as it is supported by competent, credible evidence. *Buckeye N. Coatings v. Reeves*, 2025-Ohio-5469, ¶ 18 (11th Dist.).

{¶17} R.C. 1317.12 states in relevant part:

> Notwithstanding any agreement to the contrary in a retail installment contract made on or after the effective date of this section, if collateral for a consumer transaction is taken possession of by the secured party on default, the secured

Case No. 2025-T-0066

party shall, within five business days after taking possession, send to the debtor a notice setting forth specifically the circumstances constituting the default and the amount by itemization that the debtor is required to pay to cure the default.

{¶18} R.C. 1317.12 continues, "The debtor may cure the default within twenty days after the secured party retakes possession of the collateral, or within fifteen days after the secured party sends the notice required by this section, whichever is later . . ."

{¶19} "Valid, applicable statutory provisions are part of every contract, as if written into the contract." *In re Estate of Dixon*, 2001 WL 824455,*2 (8th Dist. July 19, 2001). ("[T]he parties are as much bound by a provision contained in a law, as if that provision had been inserted in, and formed part of the contract." *Jones v. Kent City School Dist. Bd. of Edn.*, 2023-Ohio-265, ¶ 23 (11th Dist.), quoting *Ross v. Farmers Ins. Group of Cos.*, 1998-Ohio-381, ¶ 18.)

{¶20} Here, it is undisputed that Propst's death constituted a "default" under the retail installment agreement. Midway argues that such default immediately terminated Propst and his estate from any further rights in the manufactured home under the contractual language, specifically, Section 12, which granted buyer possessory right so long as the buyer was not in default.

{¶21} However, R.C. 1317.12, governing retail installment contracts, expressly states that it is to be applied, "[n]otwithstanding any agreement to the contrary." And, R.C. 1317.01(F) explicitly defines a "buyer" in a retail installment agreement to include "any legal successor in interest to such person." Thus, while the parties may have executed a retail installment agreement that attempts to circumvent the law, the plain, unambiguous language of the statute precludes parties from doing so. We therefore conclude that

Case No. 2025-T-0066

Midway was required to provide Propst's estate, a legal successor in interest, with, among other things, notice of the "amount by itemization that the debtor is required to pay to cure the default." R.C. 1317.12. It is undisputed that Midway failed to perform that statutory duty.

{¶22} While the trial court's judgment entry explains that the court found Propst's right to redemption to be an equitable right of redemption, usually attributed to real estate actions, as opposed to the applicable statutory right of redemption under R.C. 1317.12, this court has previously recognized that "a reviewing court has a duty to affirm the trial court's judgment when the judgment is correct albeit based on the wrong reason." *State ex rel. Internatl. Assn. of Fire Fighters v. Barbish,* 2024-Ohio-3148, ¶ 29 (11th Dist.) quoting *Depizzo v. Stabile*, 2006-Ohio-6102, ¶ 11 (11th Dist.). Accordingly, the trial court did not err in concluding that Midway breached the retail installment contract because Midway failed to comply with its statutory duties incorporated into the retail installment agreement.

{¶23} Midway advances a similar argument that the trial court erred in finding that Midway converted the manufactured home. Midway argues that under the terms of the contract, Propst was never the "owner" of the manufactured home, so Midway could not have converted the manufactured home. We disagree.

{¶24} The elements of conversion are "(1) the plaintiff's ownership and right to possess property at the time of the conversion; (2) defendant's conversion by wrongful act or dispossession; and (3) damages." *Floch v. Davis*, 2013-Ohio-4968, ¶ 29 (11th Dist.). However, it has long been held that in the context of conversion, "ownership" is not to be construed as absolute and outright. *See e.g. Givens v. Longwell,* 2024-Ohio-947, ¶

Case No. 2025-T-0066

10 (7th Dist.) ("The plaintiff need not be the owner but can have some other interest in the property. . .")

{¶25} As we concluded above, Propst's estate had a statutory right to cure the default and become the outright owner of the manufactured home. Midway wrongfully precluded Propst's estate from exercising that statutory right. Thus, the trial court did not err in concluding that Midway converted the manufactured home when it disposed all of Propst's personal property and resold the manufactured home to a third party.

{¶26} Midway's first and second assignments of error are overruled.

{¶27} Because they require similar analysis, we will address Midway's third and fourth assignments of error together. In its third assignment of error, Midway argues that the trial court erred in finding Midway liable for unjust enrichment. Specifically, Midway argues that Ohio law does not permit a claim for unjust enrichment to prevail when the parties have a written contract covering the subject matter of the alleged unjust enrichment. In its fourth assignment of error, Midway argues that the trial court abused its discretion in awarding attorneys' fees. We disagree.

{¶28} This court has previously recognized that, generally, "[a]n equitable action for unjust enrichment does not exist where there is a valid and enforceable contract." *Willoughby v. Willoughby*, 2014-Ohio-743, ¶ 28 (11th Dist.). However, we have also recognized that there is an exception; the complete rule in Ohio is "if an express contract exists concerning the services for which compensation is sought, the doctrine of unjust enrichment does not apply, in the absence of fraud, bad faith or illegality." *Giovannone v. Schottenstein Stores Corp.*, 2001 WL 848675, *3 (11th Dist. July 27, 2001). Thus, an

unjust enrichment claim can stand where there is a showing of fraud, bad faith, or illegality. *Id*.

{¶29} With respect to attorneys' fees, generally, the "American Rule requires each party involved in litigating a dispute to pay his or her own attorneys' fees in the absence of statutory authorization, a finding of 'bad faith,' or an enforceable contract providing for the apportionment of such fees." *Nozik v. McDonald*, 1999 WL 454503, *11 (11th Dist. June 25, 1999).

{¶30} "A lack of good faith is the equivalent of bad faith, and bad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." *Slater v. Motorists Mut. Ins. Co.*, 174 Ohio St. 148 (1962). "It is not necessary for the trial court to use the magic words "bad faith" when it awards attorney's fees." *Golden v. Waiwood*, 1996 WL 303779,*5 (8th Dist. June 6, 1996). Bad faith can be based upon a party's conduct giving rise to the claims litigated. *Barbish*, 2024-Ohio-3148, at ¶ 35 (11th Dist.),

{¶31} "The award of attorneys' fees is discretionary with the trial court." *Blancett v. Nationwide Care*, 1999 WL 3958, *7 (5th Dist. Dec. 16 1998). Therefore, we will not reverse the award of attorneys' fees unless we find the trial court abused its discretion. *Id*. An abuse of discretion is synonymous with an adjudicator's failure to exercise sound, reasonable, and legal discretion. *State v. Beechler*, 2010-Ohio-1900, ¶ 62 (2d Dist.).

{¶32} Here, the evidence established that Midway received notice of Propst's death and at least two requests for payoff information to open an estate and satisfy the retail installment agreement in whole. Further, at the time of Propst's death, the

manufactured home was substantially paid for with a down payment of $8,760.00 having been paid as well as seven out of twelve monthly payments made.

{¶33} Notwithstanding this knowledge, Midway failed to provide payoff information despite timely requests both directly and through counsel, changed the locks on the manufactured home, disposed of Propst's personal property, and resold the manufactured home to a third party. We further note that pursuant to R.C. 1317.12, Midway was required to provide notice and an ability for Propst's estate to cure the default even without the estate's prudent requests.

{¶34} The trial court's language in its judgment entry is illustrative of its view on these facts. Specifically, the trial court found the following:

> The Court finds . . . that [Midway] was given notice that the decedent had died and that an estate was to be opened to include the payoff of the manufactured home. The Court was able to observe all of the witnesses when they testified and finds the testimony of Ms. Gidden and Ms. Groghan more credible than the testimony of Ms. Grant. It appears from the testimony that Ms. Grant, representing [Midway], was aware of the estate yet went ahead and disposed of the decedent's personal property and sold the manufactured home to another individual.
>
> The Court finds that [Midway] wrongfully converted the property of the estate knowing that an estate for the decedent was filed.

{¶35} Under such circumstances, "[a]lthough the trial court did not use the term 'bad faith,' it is clear from the record that the trial court considered it as such." *Ivancic v. Enos*, 2012-Ohio-3639, ¶ 75 (11th Dist.). "The intent of [Midway] may be inferred from their reckless indifference to the facts reasonably known to them, and their contumacious behavior." *Ohio Cincinnati Bd. of Edn. v. Armstrong World Industries*, 1992 WL 314206, *6 (1st Dist. Oct 28, 1992).

Case No. 2025-T-0066

{¶36} Thus, an unjust enrichment claim is permitted to survive alongside breach of contract because the trial court made an implicit finding of bad faith. Further, the trial court did not fail to exercise sound or reasonable discretion. *Beechler*, 2010-Ohio-1900, at ¶ 62 (2d Dist.). Therefore, the trial court did not abuse its discretion by awarding attorneys' fees.

{¶37} Assuming arguendo that the trial court erred in finding Midway liable for unjust enrichment alongside breach of contract, any such error was certainly harmless. The trial court found Midway liable for breach of contract, conversion, and unjust enrichment—all theories arising from the same course of conduct where Midway failed to provide payoff information, changed the locks, disposed of estate property, and resold the manufactured home to a third party. The $14,700 in damages that the trial court awarded represented Midway's liability for that entire course of conduct. In other words, the trial court made only one ruling on damages and did not apportion a specific dollar amount to each cause of action.

{¶38} The Fifth District previously addressed this situation in *Paradise Homes, Inc. v. Limbacher*, 2005-Ohio-745, (5th Dist.). There, the Fifth District reasoned that as "the trial court did not grant separate damages for each [claim]" and "[b]ecause we find the court was correct in awarding damages on breach of contract, we find [the defendant suffered] no prejudice" by the trial court's inclusion of unjust enrichment in its findings. *Id.* at ¶ 22.

{¶39} The same situation is presented here. As we affirm the trial court's judgment for both the breach of contract and conversion claims, each of those claims independently support the damages awarded in this case. Thus, even if the trial court erred in finding

Case No. 2025-T-0066

Midway liable for unjust enrichment alongside breach of contract, Midway suffered no prejudice because no additional damages are attributable to the trial court's inclusion of unjust enrichment. *Id*.

{¶40} Midway's third and fourth assignments of error are overruled.

## Conclusion

{¶41} For the reasons set forth above, the judgment of the Girard Municipal Court is affirmed.


EUGENE A. LUCCI, J.,

SCOTT LYNCH, J.,

concur.

Case No. 2025-T-0066

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, appellant's assignments of error are without merit. It is the judgment and order of this court that the judgment of the Girard Municipal Court is affirmed.

Costs to be taxed against appellant.

JUDGE ROBERT J. PATTON

JUDGE EUGENE A. LUCCI,
concurs

JUDGE SCOTT LYNCH,
concurs

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2025-T-0066